UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JENNIFER H.,

              Plaintiff,

      v.

NANCY A. BERRYHILL, Deputy
Commissioner of Social Security for
Operations,

              Defendant.

CASE NO. 2:17-cv-01618 JRC

ORDER ON PLAINTIFF'S
COMPLAINT

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and Local

Magistrate Judge Rule MJR 13.  *See also* Consent Filed by Plaintiff To Proceed Before a

Magistrate Judge, Dkt 2.  This matter has been fully briefed.  *See* Dkt. 12, 13, 14.

      After considering and reviewing the record, the Court concludes that the ALJ did not

commit harmful legal error and that his ruling should be affirmed.  Plaintiff argues that the ALJ

erred in giving little weight to the opinions of three examining doctors—Dana Harmon, Ph.D.,

Alysa Ruddell, Psy.D., and R.A. Cline, Psy.D.  Although this Court concludes that the ALJ erred

when he relied on lack of mental health treatment as a reason to reject Dr. Harmon's opinion and

further concludes that that ALJ erred when he found that regularly attending appointments and grocery shopping were reasons to reject Dr. Ruddell's opinion, these errors are ultimately harmless because the ALJ provided multiple *other* reasons that were specific, legitimate and supported by substantial evidence when giving little weight to these examining doctors' opinions.

Further, the ALJ erred when he found plaintiff not credible insofar as he found that she was her mother's caregiver and he found that her activities of playing games, helping with homework, and driving were inconsistent with her testimony about concentration difficulties. Again, however, these errors are ultimately harmless because the ALJ provided multiple clear and convincing reasons supported by substantial evidence to find that plaintiff was not credible.

Accordingly, this Court orders that this matter be **affirmed** pursuant to sentence four of 42 U.S.C. § 405(g).


BACKGROUND

Plaintiff Jennifer H. was born in October 1979 and was 31 years old on the alleged date of disability onset of January 15, 2011. *See* AR. 270. Plaintiff's highest level of education was two years of college. AR. 307. Plaintiff worked as a cashier, truck loader, and shift manager. *See* AR. 307. She left her last job, as a cashier, because of her conditions. AR. 58, 307.

According to the ALJ, plaintiff has at least the severe impairments of depressive disorder, anxiety disorder, and degenerative disc disease of the lumbar spine. AR. 37.

At the time of the hearing, plaintiff lived in a trailer on her family's property. AR. 81.

1    <u>PROCEDURAL HISTORY</u>

2        Plaintiff's applications for disability insurance ("DIB") benefits pursuant to 42 U.S.C. §

3    423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. §

4    1382(a) (Title XVI) of the Social Security Act were denied initially and following

5    reconsideration. *See* AR. 167, 178. Following a dismissal by an ALJ in 2014 and a remand by

6    the Appeals Council, plaintiff's requested hearing was held before Administrative Law Judge

7    Tom Morris (the "ALJ") on February 11, 2016. *See* AR. 35, 148. On April 5, 2016, the ALJ

8    issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to

9    the Social Security Act. *See* AR. 46.

10        On June 22, 2017, the Appeals Council denied plaintiff's request for review, making the

11    written decision by the ALJ the final agency decision subject to judicial review. AR. 7; *see* 20

12    C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's

13    written decision in November 2017. *See* Dkt. 4. Defendant filed the sealed administrative

14    record regarding this matter on March 26, 2018. *See* Dkt. 8.

15        In plaintiff's Opening Brief, plaintiff raises the following issues: (1) whether the ALJ

16    properly evaluated the medical evidence, (2) whether the ALJ properly evaluated plaintiff's

17    testimony, (3) whether the ALJ properly assessed plaintiff's RFC and erred by basing his step

18    five finding on his RFC assessment, and (4) whether this Court should remand for an award of

19    benefits. Dkt. 12, at 1.

20

21    <u>STANDARD OF REVIEW</u>

22        Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

23    social security benefits if the ALJ's findings are based on legal error or not supported by

24

substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

DISCUSSION

**1. Medical Opinions**

Plaintiff argues that the ALJ erred when she rejected the opinions of Dr. Harmon, Dr. Ruddell, and Dr. Cline, all of whom examined plaintiff. Dkt. 12, at 2–8; *see* AR. 395, 399, 407. Dr. Harmon and Dr. Ruddell opined that plaintiff suffered from marked or marked/severe limitations to her abilities to communicate and perform in a public setting (AR. 401, 406), in contrast to state agency examiners, who opined that plaintiff had at most, moderate social interaction limitations. AR. 117, 130.

Dr. Cline opined that plaintiff suffered from moderate to marked limitations to her ability to understand, remember, and persist in tasks by following detailed instructions. AR. 394. In contrast, a state agency examiner opined that plaintiff had no limitation to her ability to carry out detailed instructions and was only moderately limited in maintaining attention and concentration for extended periods. AR. 129.

"The opinion of an examining physician is . . . entitled to greater weight than the opinion of a nonexamining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(a)(2) (2012) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s). . . .").[1] If contradicted, an examining doctor's opinion may be

_____

[1] In 2017, the Administration amended 20 C.F.R. § 404.1527 and re-codified substantially the same language as 20 C.F.R. § 404.1527(a)(1).

rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830–31. The opinion of a nonexamining doctor alone cannot be substantial evidence that justifies the rejection of an examining doctor's opinion. *Lester*, 81 F.3d at 831.

### A. Dr. Harmon's Opinion

Dr. Harmon diagnosed plaintiff with generalized anxiety disorder causing anxiety, social difficulties, and depression and opined that plaintiff suffered marked ("[v]ery significant") limitations to her ability to communicate and perform effectively in a work setting with public contact. AR. 405–06. The ALJ rejected Dr. Harmon's opinion for four reasons: (1) the ALJ noted plaintiff's personality assessment inventory ("PAI") results suggested exaggeration of symptoms; (2) plaintiff was not receiving mental health treatment at the time; (3) plaintiff's mental status examination ("MSE") results were within normal limits; and (4) evidence of dating and attending wrestling matches controverted "marked" social limitations. AR. 43. Plaintiff challenges these reasons. Dkt. 12, at 2–4.

At the outset, plaintiff correctly points out that the second reason that the ALJ provided, that plaintiff was not receiving mental health treatment at the time, was not a legitimate reason to reject Dr. Harmon's opinion. *See* Dkt. 12, at 4. With mental health conditions, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)).

Regarding the ALJ's first reason, plaintiff contends that the ALJ erred when he rejected Dr. Harmon's opinion as inconsistent with plaintiff's PAI results. Dkt. 12, at 4 & n.1. But inconsistency between a doctor's recorded observations and her opinion regarding the plaintiff's

capacities is a legitimate reason to reject the doctor's opinion.  *See Bayliss*, 427 F.3d at 1216.

Here the ALJ reasonably found that plaintiff's PAI score, which Dr. Harmon reported suggested

exaggeration or over-reporting of her mental health difficulties, was inconsistent with plaintiff

having marked symptoms from her mental health conditions.  *See* AR. 43.

Plaintiff relies on *Ryan v. Commissioner of Social Security*, which holds that an ALJ does

not provide clear and convincing reasons to reject an examining doctor's opinion "by

questioning the credibility of the patient's complaints where the doctor does not discredit those

complaints and supports [her] ultimate opinion with [her] own observations."  528 F.3d 1194,

1199–1200 (9th Cir. 2008).  This Court notes that here, the "clear and convincing reasons"

standard does not apply because Dr. Harmon's opinion in this regard was contradicted.  *See*

*Lester*, 81 F.3d at 830–31.  Also unlike *Ryan*, here the ALJ relied on discrepancy between the

doctor's recorded observations about plaintiff's PAI and her opinion, not on disbelief of

plaintiff's symptoms.  *See* 528 F.3d at 1200.  The ALJ's reliance on plaintiff's PAI scores was a

specific and legitimate reason, supported by substantial evidence in the record, to discredit Dr.

Harmon's opinion.

Regarding the ALJ's third reason, plaintiff argues that even if Dr. Harmon's MSE results

were normal, "Dr. Harmon described many clinical findings [that] supported his [sic] opinion."

Dkt. 12, at 4; *see* Dkt. 14, at 3.  But where the evidence is susceptible to more than one rational

interpretation, we uphold the ALJ's findings so long as they are supported by inferences

rationally drawn from the record.  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  It is

the role of the ALJ, not this Court, to resolve conflicts and ambiguities in the record.  *Andrews v.*

*Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Here, Dr. Harmon documented that plaintiff scored well (29/30) on a "MiniMental Status Examination," including being well-oriented to time and place, having intact short-term memory, being able to subtract serial 7s and spell "world" forward and backward, and having reading comprehension, writing, visual-spatial, and short-term memory abilities. AR. 410. Plaintiff's only deficiency was scoring a 2/3 on her listening comprehension skill. AR. 410. Moreover, Dr. Harmon otherwise documented plaintiff's appropriate appearance, normal alertness, "above-average/gifted" intellectual functioning, and intact memory, concentration, and abstract reasoning. AR. 408–09. In light of these findings, the ALJ could rationally conclude that plaintiff's conditions did not limit her ability to communicate and perform effectively in a public function to the extent that Dr. Harmon believed they did.

Fourth, plaintiff argues that online dating and attending wrestling matches were not legitimate reasons to reject Dr. Harmon's opinion. Dkt. 12, at 4. In this regard, the ALJ relied on evidence that in 2012, plaintiff entered into her first romantic relationship (AR. 570) and "decided" to go to—and later reported going to—"all of" her nephew's wrestling matches. AR. 518, 521. A conflict between a medical opinion and a claimant's daily activities may be a specific and legitimate reason to discount the opinion. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).

Contrary to plaintiff's arguments, the evidence that plaintiff entered into a romantic relationship in 2012 and reported going to all of her nephew's wrestling matches of her own volition contradicts Dr. Harmon's opinion about plaintiff's limitations. Although plaintiff argues that her medical records show her psychiatrist recommended that she go to the matches, the record states that it was plaintiff who "decided" to go to the matches because "this way she can get out of the house." AR. 521. Plaintiff points to a September 2012 record that plaintiff met

people online because she "use to meet [people] [at] school or at work but does not do those things anymore" and "does not know where else to meet [people]." AR. 542. However, this evidence supports the ALJ's finding because it shows that plaintiff sought to continue interacting with people and took affirmative steps to do so.

In sum, the ALJ erred when he relied on plaintiff's lack of mental health treatment in 2011 as a reason to discount Dr. Harmon's opinion. However, the ALJ's other reasons for discounting Dr. Harmon's opinion were specific, legitimate, and supported by substantial evidence.

*B. Dr. Ruddell's Opinion*

Like Dr. Harmon, Dr. Ruddell diagnosed plaintiff with an anxiety disorder and opined that plaintiff suffered from "Marked/Severe" limitations to her ability to communicate and function in a public setting. AR. 401. The ALJ found that Dr. Ruddell's assessment was inconsistent with the daily activities of regularly attending appointments and wrestling matches, dating, and shopping and with the medical evidence. AR. 43.

Plaintiff argues that the noted daily activities are not inconsistent with Dr. Ruddell's opinion. Dkt. 12, at 6. As discussed earlier, substantial evidence in the record supports the ALJ's finding that plaintiff attended wrestling matches, where she interacted with others, and that she met a partner online in 2012. *See supra*, part (1)(A). The ALJ legitimately found these activities inconsistent with the marked/severe social limitations that Dr. Ruddell assessed.

However, this Court agrees with plaintiff that her testimony about grocery shopping is not reasonably viewed as inconsistent with Dr. Ruddell's assessment of social limitations. *See* Dkt. 12, at 6. Plaintiff testified that she grocery shopped only as often as once a month because of her anxiety, which made her "too afraid to go to the store." AR. 77. Moreover, the ALJ did

not explain why "regularly attending" medical appointments demonstrated improved mental functioning. *See* AR. 43. Because the ALJ failed to provide a specific, legitimate reason, the ALJ erred in this regard.

### C. Dr. Cline's Opinion

Dr. Cline examined plaintiff in October 2012 and diagnosed her with a major depressive disorder, "recurrent, moderate" and anxiety disorder "NOS, with features of panic disorder." AR. 394. He determined that plaintiff suffered from moderate depression/lack of motivation, mild to moderate anxiety/panic, and moderate insomnia/hypersomnia. AR. 393. Dr. Cline rated plaintiff as having moderate to marked limitations to her abilities to understand, remember, and persist in tasks by following detailed instructions. AR. 394–95.

The ALJ rejected Dr. Cline's opinion on the basis that it was inconsistent with his MSE results. AR. 43. Notably, Dr. Cline documented that plaintiff's thought process, orientation, perception, memory, fund of knowledge, concentration, and abstract thought were all within normal limits. AR. 385. He recorded that plaintiff could immediately and after five minutes recall three objects, could perform a three-step task, could count by serial 3's but made errors counting by serial 7's, and had no memory impairment. AR. 386. Dr. Cline's test results also showed that plaintiff suffered only mild anxiety and moderate depression. *See* AR. 382. Again, conflict between a doctor's recorded observations and his opinion may be a legitimate reason to discredit the opinion. *See Bayliss*, 427 F.3d at 1216.

Plaintiff argues that the ALJ should have given more weight to clinical findings consistent with Dr. Cline's opinion. Dkt. 12, at 8. Namely, plaintiff argues that the ALJ should not have discounted Dr. Cline's opinion because it derived from his finding that plaintiff suffered from depression/anxiety/insomnia symptoms, his observation that plaintiff had a "[s]lightly

dysthymic" mood and flat affect, and test results that showed effort and task cooperation. Dkt. 12, at 6–7. But the ALJ properly found that the majority of Dr. Cline's observations and findings were inconsistent with his conclusion about plaintiff's limitations. In doing so, the ALJ provided specific and legitimate reasons, supported by substantial evidence, for discrediting Dr. Cline's opinion.

### D. Remaining Issues

Plaintiff summarizes evidence consistent with Dr. Harmon's, Dr. Cline's, and Dr. Ruddell's opinions and appears to argue that the ALJ erred because he should have accepted the doctors' opinions as consistent with the record as a whole. Dkt. 12, at 10. Again, however, where the evidence in the record supports more than one rational interpretation, this Court defers to the ALJ's interpretation of the record, so long as it is rational. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Here, as set forth above, the ALJ provided specific, legitimate reasons supported by substantial evidence in the record for not crediting Dr. Harmon's, Dr. Cline's, and Dr. Ruddell's opinions. In doing so, the ALJ also found that conflicting opinions were more consistent with the record. AR. 44; *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (when consistent with other independent evidence in the record, a nonexamining doctor's opinion may constitute substantial evidence).

Plaintiff also conclusorily argues that the ALJ erred in rejecting other limitations described by Drs. Harmon, Ruddell, and Cline. Dkt. 12, at 4, 6, 8. This Court disagrees that the ALJ failed to account for these other limitations. In addition to the limitations addressed above, these doctors also opined that plaintiff had marked to severe limitations to her ability to adapt to change (AR. 401), marked limitations to her ability to complete a normal workday/workweek without interruption (AR. 395), and moderate limitations to a number of basic work activities

including completing tasks and performing on a regular schedule without supervision.  *See* AR.

401.  However, the ALJ included a number of limitations in the RFC related to plaintiff's basic

work abilities.  In addition to limiting interactions with the public, coworkers, and supervisors

and requiring occupations dealing with things, not people, the RFC required only occasional

changes to the work environment and an allowance for being off-task 10% of an 8-hour

workday.  AR. 39.

The RFC assessment is within the ALJ's purview—not a doctor's.  *Vertigan v. Halter*,

260 F.3d 1044, 1049 (9th Cir. 2001); 20 C.F.R. §§ 404.1546, 416.946.  The ALJ need not adopt

identical limitations to those recommended by doctors.  *See* 20 C.F.R. §§ 404.1527(d)(2) (the

final responsibility for deciding the RFC is reserved to the Administration), 416.927(d)(2).  Here,

the ALJ included in the RFC limitations related to plaintiff's ability to complete tasks and

normal work hours, perform on a regular schedule without supervision, and adapt to changes

when the ALJ formulated an RFC with only occasional environmental changes and an allowance

for being off-task.  *See* AR. 39.  Neither does plaintiff set forth any arguments as to how

particular limitations were not adequately addressed by the RFC.  Thus this Court does not

conclude that the ALJ rejected the other limitations described by Drs. Harmon, Ruddell, and

Cline.

### 2. Credibility

"In assessing the credibility of a claimant's testimony regarding subjective pain or the

intensity of symptoms, the ALJ engages in a two-step analysis."  *Molina*, 674 F.3d at 1112.

"First, the ALJ must determine whether there is 'objective medical evidence of an underlying

impairment which could reasonably be expected to produce the pain or other symptoms

alleged.'"  *Id.* (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)) (citation omitted).

"If the claimant has presented such evidence, and there is no evidence of malingering, the ALJ must give 'specific, clear and convincing reasons' in order to reject the claimant's testimony about the severity of the symptoms." *Id.* (quoting *Vasquez*, 572 F.3d at 591) (citation omitted).

The ALJ found that plaintiff's symptoms could reasonably be expected to cause some of her alleged symptoms but that her statements about the symptoms' intensity, persistence, and limiting effect were not entirely consistent with the record. AR. 40. Plaintiff challenges a number of the ALJ's findings in this regard, as set forth more fully below.

Regarding plaintiff's claims about her physical symptoms, first, plaintiff argues that it was error for the ALJ to find "'minimal complaints'" of physical pain in light of plaintiff's testimony that she put off attending medical appointments so she would not "'have to go anywhere.'" Dkt. 12, at 11 (quoting AR. 40, 78). Although plaintiff testified that she put off appointments for things such as stomach pain, she did so as part of her discussion of anxiety symptoms. AR. 78; *see* AR. 76–79. Her testimony was that she sought to avoid these appointments because of anxiety, not back pain-related limitations. Thus this testimony is consistent with plaintiff having minimal complaints of back pain symptoms.

Second, plaintiff argues that the ALJ failed to provide convincing reasons for finding plaintiff's physical conditions as "'benign'" in light of three records inconsistent with such a finding. Dkt. 12, at 11 (quoting AR. 40). In two of these records, from 2013, providers diagnosed plaintiff with chronic right hip pain and acute leg numbness (AR. 506) and chronic right side sciatica and acute compression neuropathy (AR. 681). In the third record, from 2014, plaintiff reported lower back and associated thigh pain. AR. 841.

However, the ALJ took into account the three records that plaintiff cites when the ALJ rendered his decision. *See* AR. 40. First, from the 2013 records, the ALJ noted that physical

examination showed normal results.  *See* AR. 509 ("no abnormality," "[n]o kyphosis," "[n]o

scoliosis," "[n]ormal flexion," "[n]ormal extension," "[n]o tenderness").  March 2013 x-rays

further showed "[s]traightened alignment" of the spine without evidence of "anterior

compression deformity" or "significant decrease in height of the joint spaces."  AR. 625.  The

ALJ acknowledged that plaintiff reported worsened pain in May 2013 but noted that her treating

doctor recommended treatment with exercise.  AR. 40, 681.  Moreover, in 2014, when plaintiff

reported increased pain, her physician noted that the MRI was "essentially benign" and showed

no findings explaining her symptoms.  AR. 40, 843.  Thus, the ALJ provided clear and

convincing reasons supported by substantial evidence when he found that plaintiff's physical

conditions were not as severe as plaintiff claimed.

Third, plaintiff argues that the evidence that the ALJ relied on as contradicting plaintiff's

claim she had not exercised in about 2 years in fact corroborates her testimony.  *See* Dkt. 12, at

11.  To the contrary, the ALJ relied on a 2015 report stating that plaintiff exercised 2–3 times per

week and 0–5 hours per week—a statement directly contradicting plaintiff's testimony that she

had not exercised since about 2014.  *See* AR. 41, 847.  Plaintiff argues that the report "may have

been pre-filled" with information, but the record does not support that this medical record merely

duplicates a prior history note.  *Compare* AR. 847 *with* AR. 502, 620, 684.

This Court agrees with plaintiff that substantial evidence does not support a finding that

plaintiff was her mother's caregiver.  *See* Dkt. 12, at 12; AR. 41, 450.  However, the record does

support the ALJ's remaining reasons for finding plaintiff's physical activity inconsistent with her

claims of physical pain:  plaintiff stated that she cooked daily (AR. 400) and gardened (AR. 562,

574, 587, 594, 794, 821).

Regarding the ALJ's finding that plaintiff's mental symptom testimony was not credible, plaintiff first argues that the ALJ improperly recited the medical testimony in support of his residual functional capacity determination rather than properly specifying the testimony he found not credible and then giving clear and convincing reasons to support the determination. Dkt. 12, at 12; *see Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). But in *Brown-Hunter*, the ALJ erred because she simply stated her non-credibility conclusion—that the claimant's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent that they were inconsistent with the RFC—and failed to identify which statements she found not credible and why. *Id.* at 493. Here, in contrast, the ALJ stated that plaintiff had testified that her anxiety and depression were disabling. *See* AR. 41. Then the ALJ set forth over a page of evidence that contradicted plaintiff's testimony in this regard, including multiple normal mental status examination results and statements that medication helped plaintiff. *See* AR. 41–42. In doing so, the ALJ did not err under *Brown-Hunter* because the ALJ stated which testimony he found not credible and then set forth clear and convincing reasons to support that determination.

Second, plaintiff argues that the ALJ erred in finding that plaintiff's 2015 activities were inconsistent with her testimony that her anxiety and depression were disabling. Dkt. 12, at 12–13. Daily activities may form the basis for an adverse credibility determination where they contradict a plaintiff's other testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ found that evidence that plaintiff left her trailer daily and her property 1–2 times weekly contradicted plaintiff's testimony that she rarely went out due to anxiety. *See* AR. 42. Substantial evidence supports the ALJ's finding, which was in conflict with plaintiff's testimony.

*See* AR. 815 (plaintiff reported that she left her trailer daily and the family property 1–2 times weekly with no panic for months, a "big improvement").

Third, plaintiff argues that the ALJ erred when she found that plaintiff's MSE results contradicted her testimony about concentration issues. Dkt. 12, at 13; *see* AR. 42. Although plaintiff argues that the MSE results were consistent with plaintiff's testimony, plaintiff's MSE results repeatedly showed normal concentration. *See* AR. 377, 396, 409, 804, 822. The ALJ properly took this inconsistent objective medical evidence into account when he determined plaintiff's credibility. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

However, this Court agrees with plaintiff that the ALJ erred when he stated that plaintiff's activities of playing games on her phone, helping her mother with litigation issues, helping her nephews with homework, and driving were inconsistent with her testimony about lack of concentration. *See* Dkt. 12, at 13; AR. 42. Notably, plaintiff did not testify that she lacked the ability to concentrate entirely. Instead she testified that she struggled with focusing on difficult tasks, such as reading letters from DSHS. AR. 74.

Fourth, plaintiff argues that the ALJ erred when he found examples of plaintiff's social functioning that contradicted her testimony that she rarely went out due to anxiety and avoided socializing with others. Dkt. 12, at 13. The ALJ relied on evidence that plaintiff entered into her first romantic relationship in 2012, with a man she met online. AR. 570. Plaintiff also attended "all of" her nephew's wrestling matches, where she socialized with others. AR. 518. Plaintiff reported that she attended the matches of her own volition, so that she could leave the house. AR. 521. In 2013, plaintiff "ke[pt] busy" taking her nephew to his extracurricular activities. AR. 441. And in 2015, as set forth above, plaintiff reported leaving her home daily and her property one or two times weekly. AR. 815. Thus the ALJ provided clear and convincing

reasons supported by substantial evidence for finding plaintiff's activities contradicted her

testimony about her social functioning.

### 3. Harmless Error

"[H]armless error principles apply in the Social Security Act context." *Molina*, 674 F.3d

at 1115. An error is harmless if it is inconsequential to the ultimate nondisability determination.

*Id.*

As set forth above, the ALJ provided specific, legitimate reasons supported by substantial

evidence in the record when he found that Dr. Harmon's recorded observations of plaintiff's PAI

and mental status examination results and plaintiff's daily activities were inconsistent with Dr.

Harmon's limitations on plaintiff's ability to work in a public environment. Although the ALJ

also provided a reason that was not legitimate—failure to receive mental health treatment—the

error in this regard was harmless because the ALJ provided three proper reasons to discredit Dr.

Harmon's opinion. *See Carmickle v. Cmm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008).

Regarding Dr. Ruddell's opinion, the ALJ provided specific, legitimate reasons supported

by substantial evidence in the record when he found plaintiff's frequently attending wrestling

matches where she socialized with others and online dating were inconsistent with the

marked/severe social limitations that Dr. Ruddell assessed. Although the ALJ also noted two

activities—grocery shopping and attending appointments—that were not specific and legitimate

reasons to discount Dr. Ruddell's opinion, any error in this regard was harmless because the

ALJ's findings regarding wrestling and dating were specific, legitimate and supported by

substantial evidence in the record.

Further, regarding Dr. Cline's opinion, the ALJ's reliance on plaintiff's inconsistent mental status examination results was a specific, legitimate reason supported by substantial evidence to discredit Dr. Cline's opinion.

This Court notes that the ALJ in fact found that plaintiff did have some social and concentration limitations. *See* AR. 43–44. The ALJ included in the RFC that plaintiff could have only occasional superficial interactions with coworkers and superficial interactions with the general public, should have occupations dealing with objects rather than people, and would be off task 10% over an 8-hour workday. AR. 39. And because the ALJ provided specific, legitimate reasons supported by substantial evidence in the record to discredit the examining physicians' opinions about the severity of plaintiff's social and concentration limitations, the errors identified above were harmless.

Regarding plaintiff's credibility, although the ALJ erred when he found that plaintiff's daily activities controverted her testimony about concentration issues and that plaintiff had been her mother's caregiver, the ALJ otherwise provided clear and convincing reasons supported by substantial evidence in the record when he found plaintiff not credible. Even where an ALJ provides some invalid reasons to support an adverse credibility determination, reliance on those reasons is harmless error if "there remains 'substantial evidence supporting the ALJ's conclusions on . . . credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion.'" *Carmickle*, 533 F.3d at 1162 (quoting *Batson v. Cmm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)).

Here the ALJ provided valid reasons to support his credibility determination. He found that the record controverted the severity of plaintiff's alleged back pain; her testimony that she had not exercised in about 2 years; her claim that her anxiety and depression were disabling; her

testimony that she could not concentrate, in light of mental status examination results; and her testimony that she rarely went out due to anxiety and avoided socializing with others, in light of her attending wrestling matches and online dating. In view of these valid reasons, this Court finds that the error in the credibility determination was harmless.

<u>CONCLUSION</u>

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

**JUDGMENT** should be for the defendant, and the case should be closed.

Dated this 27th day of November, 2018.

J. Richard Creatura
United States Magistrate Judge